2014, 31-13, Ms. Brownell, when you are ready. Thank you. Thank you. May it please the court. My name is Bonnie Brownell. I'm with the law firm of the Brownell Law Firm. I'm here on behalf of my client, the petitioner, Judge Mark Shapiro, and I am here to provide a summary of our position that the Social Security Administration charged our client with mismanaging the cases to which he was assigned by failing to provide timely hearings and decisions in the cases to which he was assigned. The agency explicitly charged that this failure constituted unacceptable performance which in turn constituted good cause for removal. The agency did not prove this charge and the agency's failure to prove this charge is set forth in the complaint, if not before this court. Likewise, we assert that the SSA did not charge that Judge Shapiro's unacceptable performance was based on his comparative productivity to his peers. The production totals set forth as two of the three proofs in Specification 3 are set forth to prove the charge of unacceptable performance, which is the alleged failure to provide timely hearings and decisions in the cases to which he was assigned. The assertion is that a second and independent charge was invented out of whole cloth for the first time by Judge Smith and set forth for the first time in his decision below. But didn't he handle and decide many fewer cases than other judges who constituted a standard of performance? That is true, Your Honor. There is an objective statement that he performed, but that is not the good cause that the agency offered for his removal. The agency offered that the good cause for his removal was that he mismanaged the cases to which he was assigned. That is a wholly different charge and this is about did they charge him with the good cause and the unacceptable performance for which they charged him. And our answer is they did not. In fact, the agency did not mention productivity as an independent and a dispositive reason for his removal until the judge created that in his opinion. It seems to me that is exactly what Specification 3 charts. It says responded and not acceptably manages cases and then it provides examples for three different fiscal years comparing his productivity to other judges' productivity. How could you not read that as a charge of his productivity is not up to the standards? Your Honor, charge 1 has to be read as it is currently structured. And charge 1, the first two sentences of charge 1 are we are charging him with unacceptable performance and that unacceptable performance is untimely, untimeliness. Now, the number of production of cases… But you are trying to read this charge in a very technical way. I mean, 7513 does not apply here, right? Absolutely not. So all that agency has to do is show good costs. And they have to give him notice of what he is being charged with, of course. But when you see Specification 3 and all it does is list examples under the language that he did not acceptably manage his cases because his production is less than others, how is he not on notice what he is being charged with? Your Honor, the regulations, the case law in existence that is applicable to cases of original jurisdiction before the MSPB and the prosecution process require that Judge Shapiro is apprised of the unacceptable performance for which he was charged. And that unacceptable performance was that he did not issue decisions or hold hearings in a timely manner. The fact that he has less productivity than others is an indication of him not processing his cases. But it is not dispositive proof standing alone. Judge Bice, as presented in the Respondent's Brief, who is the proposing official from the agency here, indicates that his low productivity is an indication that he is not performing his duties or that he is neglecting his duties. We went through each and every case that the agency indicated was illustrative. And we found that Judge Smith was not dithering. He was not neglecting his duties. What he was doing was developing the record in a manner that he thought was appropriate. He was going out and getting medical records. He was working with support staff that did not always do what he asked them to do. And Judge Smith said that more than a third of the processing time attributed to the longevity of his case processing time was due to his support staff. He also indicated that it was due to the development of the record. We also established that the case processing times that the agency presented contained mathematical errors. We presented all of that to Judge Smith's satisfaction. The bottom line is Judge Smith agreed with us that the agency did not prove that Judge Smith took too long to decide his cases, that his processing times were unacceptable. The agency is not arguing here that there is a production quota. And what Judge Smith did is try to argue indirectly or conclude indirectly what the agency can argue directly. If you conclude in this case that Judge Smith should be removed because he did not produce a certain number of cases, you are enforcing a quota. Likewise, under the Goodman decision, you can discuss productivity. And we can look at relative productivity. But in Goodman, it says that you have to have a meaningful comparison. The statistical analysis in this case that determines that in which Judge Smith concluded that Judge Shapiro's productivity was too low was a situation in which the court clearly acknowledged that there had to be a meaningful comparison of Judge Shapiro's cases and case loads. And our argument in this case is that you cannot take an objective number in this case and say that it's too low. But the evidence goes far beyond that. There is testimony from the agency that his case load was looked at in detail, and it wasn't found to be any different in kind or degree or difficulty than other ALJs. So they did do that further adjustment beyond just the mere numbers. Your Honor, the suggestion that the number of cases he produces is indicative of his dependent upon this inference that the agency is trying to draw that he didn't properly manage his cases. And that's why they charged it that way. How else would they? I mean, you say they can't have a quota, and I understand that there's some settlement out there that says they can't have a quota. But they can certainly expect all their ALJs to perform at a same or similar rate, can't they? Not if they don't assign them enough cases. Not if they don't provide them with the opportunity. Well, why would they assign him more cases if he can't get through any of them? Well, they charged him from 2008 to 2010. I know, but this went on for 15 years. That's outside the period for which they charged him. They're charging him for not producing cases at a certain level. They're not assigning him the cases that he didn't produce. So you think because he couldn't perform for 15 years that in these latter three years they should have assigned him 600 or 700 cases so that he could fail miserably before he could be removed? Your Honor, the court in this case has to conclude that there is a reasonable comparison between Judge Shapiro's caseload and his colleagues before they can adopt some sort of statistical inference that his numbers are too low. But the ALJ found that there was. Well, I asked you what number did the ALJ find was too low. The ALJ said by speculation based on the status quo in which Judge Shapiro could not produce over a certain number of cases, the judge said that the reason he couldn't produce over that number of cases was because his support staff that the agency controlled was responsible for a large percentage of his case processing time. So if you take that away and you give him the staff that would have been able to produce at the levels that he required, how many cases could he have produced? He says he could have produced 300. Judge Smith actually understates that and says 200. He says he thinks he could produce 300. How many could he produce if he had appropriate support staff? 400. Judge Bice says she doesn't know whether she would have fired him for 300 or 400 case production. All we know is that the reason his case processing time was longer than others is because he didn't have the support staff that he required. And if they had fixed that, if the agency that was responsible for his support staff had fixed that and everyone acknowledges he wasn't responsible for that, he might have been able to produce a lot more. The concept of a comparative analysis is in Goodman and in Goodman the cases and the caseloads have to be comparative and that simply is not the case here. We think that this case is about charging and we think this case is about Goodman and the productivity issues and in this case there is no situation in which the government proved the case that it charged. It is undisputed in this case that the agency must set forth a charge and prove it. The agency agrees with this assertion. It states that without question a presiding official may not split a single charge into several charges and then sustain one of the newly formulated charges. And when a charge is labeled, the label and not something else must be proven. That's what the SSA asserts in this case. Also, under the cases that involve original jurisdiction, once a charge is made, it is the agency that bears the burden of proof. If the charge is found supported by a preponderant evidence, it must then be decided whether the conduct in question is good cause to suspend or take action against the petitioner. We note that the respondent's brief appears to suggest that if Judge Shapiro could have guessed during the course of his hearing that the ALJ was going to substantially alter the gravamen of the charge after the record closed, that he should have anticipated such and altered his defensive strategy accordingly. This is simply not consistent with basic principles of due process and federal employment law. Ms. Brownell, you're into your rebuttal time. You can continue or you can say it. I would like to preserve my rebuttal time. Thank you, Your Honor. Mr. Bruston. Good morning, Your Honors. May it please the Court. I'd like to start with the basic premise of the petitioner's case here, which is that this Court should parse the exact words of the charge and the specifications and hold them solely to the wording that's used. If they are able to demonstrate in any manner that something outside of the exact wording that's used in the complaint was the formation, the basis of the removal, that this should be overturned. You have to look at the complaints, don't we? Isn't that a matter of due process? You do. And what I think the problem is, it's a many-layer problem. First, they're seeking to mischaracterize what the charge and the specification are. The specification very clearly lays out that the number of dispositions that he issued in 2008, 2009, and 2010, and the number of cases he scheduled for hearing in those years was far below that of his peers. So there's the argument that somehow Mr. Shapiro was unaware that his productivity was really the gravamen of Specification 3 is really a spurring argument. That's different from the timing point, which he found was not met. Correct. Specifications 1 and 2 were very clearly that he decided his cases too slowly, scheduled his hearings too slowly. Specification 3 is that he did not acceptably manage his cases in the following ways, two of which were that he did not issue dispositions in a sufficient number, and he did not schedule hearings in a sufficient number. But what I think is important to step back from is that the requirement that they be tied in a mechanistic manner, as agencies are in 7512 actions, where they really are limited to what's charged in the Notice of Proposed Action and cannot go outside that, is really an inapt mechanism for an ALJ removal, which is governed by 7521. The only statute that governs this, 7521, says that an ALJ can only be removed after good cause is found. The regulations that underlie 7512 and 7521 speak to the different manner in which those removal actions can be taken. 7512 actions really do limit the agency to what they have charged, and there are greater strictures on the agency. With ALJs, there was an understanding that there aren't going to be the same level of notice and due care required because to get a good cause finding, you have to file a complaint with the MSPB. There's a discovery process. There's an answer. There's going to be a hearing. In this case, there was a hearing. They got the agency put on its case in chief. The ALJ then adjourned the hearing and permitted Mr. Shapiro to take additional evidence. He was then permitted to put on his evidence. There had to be an initial decision and a review, all before the proposed action could be taken. The idea that if, in fact, the court were to agree with Mr. Shapiro's characterization of the charge, that it all had to do with timeliness and that even the productivity pieces somehow relate to timeliness. The government would submit that under 7521, as long as he has notice of the actions that are alleged to support the conduct, in this case, unacceptable performance, that that's acceptable. In Brennan, which I believe is the only federal circuit case that deals with an ALJ who was sought to be removed for productivity, the court held that, and this was in 1982, all that needs to be put in the complaint is enough to put the ALJ on notice of what actions are being alleged so that it can respond to them or justify the actions being alleged. I think there's no dispute here that Mr. Shapiro was well aware that his productivity was at issue. In page 29 of our brief, we cite several excerpts from the transcript in which he was asked specifically what he understood Specification 3 to be. And he said, my understanding is that they're saying that since I didn't produce enough decisions, I didn't produce very many decisions and I was taking too long. So it's not that he believed it was all a question of timeliness and somehow the productivity supported that charge. And I think the text of Specification 3, which is at J, 242 and 243 supports that. Mr. Brownell said he didn't get enough support. Well, there's the, you mean the supporter cases, I'm sorry. Staff support. Staff support. What ALJ Smith found in applying the Goodman construct, the apples to apples comparison to Mr. Shapiro's timeliness argument or his defense of the argument was that he believed, ALJ Smith believed that they needed to demonstrate in order to show that his timeliness wasn't somehow caused by the staff that he had the same support staff. The problem is there's no evidence that the support staff impacted his inability to decide a sufficient number of cases or decide a sufficient number of hearings. Once the agency has proven its allegations by preponderant evidence, the burden shifts to Mr. Shapiro not to simply speculate that there's another issue that could be out there, but to produce evidence. Here, he was given numerous counseling sessions, the purpose of which were to identify constraints upon his productivity. He never once said, you know, that support staff is really just keeping me from being able to decide my cases. And what ALJ Smith found was that a prudent ALJ, and the board agreed with this, a prudent ALJ recognizing as perhaps he did that his staff was slowing him down would go ask for more cases. If truly the delay was not his performance but that of his staff when the case was outside of his control, well then he should have bumped up his docket. He should have said, you know what, I need 1,000 cases on my docket because then I can reach the level of productivity that is expected of me. He certainly was aware that the agency found his productivity inadequate. And in fact, after he received these counseling sessions, his productivity declined. So if in fact the staff constraints upon him were causing his low productivity, it would have been incumbent upon him. You know, he's not a factory worker. He is a highly paid, highly educated judge. He's amongst the most highly well-paid employees of the agency. He can't simply sit back and in the face of being told that he's not producing a sufficient amount... Well, apparently he could for 15 years. Why did it take so long for them to correct this performance? My understanding was that there was a concern in the agency after the Goodman decision that perhaps the agency could not, in fact, remove ALJs for poor productivity. Do you think Goodman is right? I mean, it's a poor decision. We're not really bound by it. Do you think that it's a little too stringent on how you prove lack of production or efficiency? I think it is. I think it's both too constrictive with productivity, although I think that at least with productivity there is a more objective level that you can view someone's performance. I think ALJ Smith's application of Goodman to the timeliness piece is really inappropriate and far too strict. The SSA is never going to say cases should take X number of days and if you go over 35 then you're being too slow. Why not? The board does. The administrative judges at the MSPB have very strict time requirements and processing requirements and my understanding is that their performance is rated on those time requirements. Why can't SSA do that? I believe it's because under the APA there's a concern that doing that would interfere with the judicial independence and there is a recognition that within the cases that the ALJ and SSA handle there are different types of cases and so perhaps you could come up with some sort of structure where different types of cases have different time periods but there's an understanding that certain cases are perhaps shut and closed and other ones require a lot more factual development and the agency has shied away from doing that but with respect to productivity at least under Goodman there are objective factors once it's proven that there's an apples-to-apples comparison so I think it's a little bit easier. The fact is I think ALJ Smith grappled on to Goodman because it is really the only precedent out there he could point to to guide his evaluation of the evidence and I think his application of it to the timeliness piece resulted in an errant decision on the timeliness piece so we're obviously not contesting that in this case. Unless your honors have any more questions we would ask the court to affirm the decision of the MSPB. Thank you Mr. Breskin. Ms. Brownell has a little more than 4 minutes for rebuttal time. Judge Shapiro is being removed for unacceptable performance of his cases. Apparently it's because he is producing too few at this point in time according to Judge Smith. How does he produce more cases? He produces more cases by being faster. We proved that there are not any issues in the illustrative cases and in many of the other cases that the agency presented that indicated that he's too slow. There were third factors that suggested as to his speed so there really isn't a basis for saying he should be faster because his staff is too slow, he's not responsible for his staff I don't mean to say his staff is too slow his staff wasn't responsive in ways that he needed and the agency is responsible for the staff he had difficulty getting medical records in New York City because he wanted to develop the record. This man is not sitting around doing absolutely nothing he's working hard to develop the record and the reason the agency does not provide a timeline for when a case does not provide productivity requirements is because their emphasis is stated in this complaint is what is it that Judge Shapiro needs to do to do his job and get these cases adjudicated as soon as possible. There's only two things he could do to produce more cases one is to be faster, Judge Smith said that's not an issue the agency didn't prove that he's too slow so he couldn't necessarily be faster. Just because they didn't prove he was too slow doesn't mean he wasn't too slow it just meant they didn't meet that burden of proof what other explanation is it that he is producing a fraction of the amount of the cases that everybody else in this office does? He is producing cases that he's going in and developing the record he's putting out certain kinds of requirements on his support staff that they're not meeting in a timely manner they're miscalculating the length of time that it takes So where is the evidence in the record that he made requests for additional support staff or complained about his support staff or that? I don't have it right at my tip but I can tell you that according to the respondent's brief the performance meetings were designed to determine whether there were causative factors that interfered with his ability to produce timely case processing times and they did, they figured it out we proved to the court's satisfaction that Judge Shapiro was not a ditherer that he was not moving cases back and forth inappropriately between case codes all of the things that the agency presumed were the reasons that he was too slow were not true. What we proved was that he was engaging in a diligent effort to develop the record and the agency has never said that any of these efforts were inappropriate or that they took too long or that he was too slow The second issue about asking for more cases that he could have asked for more cases that clearly is not supported by this record he was not allowed to ask for more cases in fact the agency's counseling sessions they specifically took cases away from him at the end of the processes so that a case that he should have been able to keep and come to disposition within a fairly short period of time those cases were taken away from him and those stats were given to someone else and that's the whole point of the Goodman analysis he did not have the same number of cases to work from and the same spread of easy to difficult cases with respect to the charge, it is our position that Judge Smith impermissibly rewrote the charges we are not talking about a technical interpretation here  to deliver decisions and hearings as soon as possible, in a timely manner that's the only thing that he was required to do they said that the hearing office was supposed to provide timely decisions and hearings you have to write that out of this complaint you have to completely take those out likewise, Judge Cristado, who is the founder of the benchmarks that are the basis of the agency's position didn't say people need to provide more cases he said you need to move more quickly the whole point of it was that the cases were taking too long to process and we proved that Judge Shapiro was not engaging in inappropriate slowness in the processing of his cases thank you